IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SHANNON LEE**,<br>c/o Cornerstone Law Firm<br>5821 NW 72nd Street<br>Kansas City, MO 64151<br><br>   Plaintiff,<br><br> v.<br><br>**DELILAH DEVELOPMENT, LLC, d/b/a**<br>**Sport Clips,** a Missouri limited liability company,<br>*Registered Agent:*<br>TODD MAYFIELD<br>8815 Metcalf Ave.<br>Overland Park, KS 66212<br><br>   Defendant. | Case No.: _____<br><br>**REQUEST FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Shannon Lee, by and through her undersigned attorney, and for her cause of action against Defendant Delilah Development, LLC, states and alleges as follows:

**Parties and Jurisdiction**

1. This is an employment case based upon and arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").

2. Plaintiff Shannon Lee (hereinafter "Plaintiff") is a female citizen of the United States, domiciled in Olathe, Johnson County, Kansas.

3. Defendant Delilah Development, LLC, doing business as Sport Clips (hereinafter "Sport Clips") is and was at all relevant times a Missouri limited liability company with its principal place of business in the Kansas City, Missouri.

4. Sport Clips conducts substantial and continuous business in the State of Kansas, specifically in Johnson County, Kansas.

5. At all times relevant, Sport Clips operated the hair salon where Plaintiff worked, located at 10466 South Ridgeview Road, Olathe, Kansas 66061.

6. At all times relevant, Sport Clips employed fifteen (15) or more people in each of twenty (20) or more calendar weeks in the calendar year in which Plaintiff was terminated and/or the preceding calendar year.

7. Sports Clips maintains locations in both Kansas and Missouri.

8. At all relevant times, Sport Clips has been engaged in trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

9. At all relevant times, Sport Clips was engaged in interstate commerce.

10. Sport Clips is an employer within the meaning of Title VII.

11. At all relevant times, Sport Clips had employees engaged in trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

12. At all relevant times, Sport Clips' annual gross volume of sales made or business done was not less than $500,000.00.

13. At all relevant times, Sport Clips has been an enterprise engaged in commerce within the meaning of the FLSA.

14. At all relevant times, Sport Clips has employed employees, including Plaintiff.

15. At all relevant times, Sport Clips' employees, including Plaintiff, were engaged in commerce and/or worked for Sport Clips which is an enterprise engaged in commerce.

16. Sport Clips is an employer within the meaning of the FLSA.

17. To the extent Sport Clips is not an employer within the meaning of the FLSA, it is an employer within the meaning of the Kansas Minimum Wage and Maximum Hours Law, K.S.A. 44-1201 *et seq.* ("KMWMHL").

18. At all relevant times, Sport Clips employed more than five hundred (500) employees.

19. At all relevant times, Sport Clips employed more than two hundred (200) employees.

20. At all relevant times, Sport Clips employed more than one hundred (100) employees.

21. Jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1331 as some or all of Plaintiff's claims arise under the laws of the United States.

22. This Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of the state of Kansas pursuant to 28 U.S.C. § 1367(a), as such claims are so related to Plaintiff's claims arising under the laws of the United States that Plaintiff's claims form part of the same case or controversy.

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## Administrative Procedures

24. On or about July 19, 2021, Plaintiff timely filed a charge of discrimination against Sport Clips with the United States Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC"), alleging discrimination based on her sex as well as retaliation (attached as Exhibit 1 and incorporated by reference).

25. On or about February 23, 2022, the EEOC issued Plaintiff a Notice of Right to Sue with regard to Plaintiff's claims (attached as Exhibit 2 and incorporated by reference).

26. This lawsuit was filed within ninety (90) days of the issuance of the EEOC's Notice of Right to Sue.

27. The aforesaid Charge of Discrimination provided the EEOC and KHRC sufficient opportunity to investigate the full scope of the controversy between the parties, and accordingly, the sweep of the judicial complaint may be and is as braid as the scope of an EEOC and KHRC investigation which could reasonably be expected to have grown out of the Charge of Discrimination.

28. Plaintiff has satisfied all private administrative and judicial prerequisites and judicial prerequisites to the institution of this action.

29. This Complaint is filed within the applicable stature of limitations.

### Additional Factual Allegations

30. Plaintiff was hired by Sport Clips as Salon Manager in approximately February 2020, and began working in March 2020 for approximately two weeks before the global shutdown of businesses due to the COVID-19 pandemic.

31. Plaintiff resumed work for Sport's Clips at the beginning of May 2020 at one store, working there for a short period before beginning her primary role for which she had been originally hired, managing Sport Clips' newly opened store on Ridgeview Road in Olathe, Kansas.

32. Plaintiff learned she was pregnant between the end of her employment with Sport Clips in March 2020 and when she resumed her employment in May 2020.

33. Plaintiff did not inform Sport Clips that she was pregnant until after she resumed working in May 2020.

34. In July 2020, Plaintiff reported a concern to her supervisor ("J.H.") about Sport Clips' pay practices with regard to the employees Plaintiff managed.

35. Specifically, J.H. had instructed Plaintiff to take hours off employees' timecards.

36. J.H.'s instruction to Plaintiff to take time off employees' timecards often resulted in employees not receiving one-and-one-half times their regular rate of pay for any hours worked over forty (40) hours per workweek, or otherwise not being compensated for all time that they actually worked.

37. In July 2020, Plaintiff told J.H. that she was uncomfortable with J.H.'s instruction to take hours off employees' timecards.

38. In August 2020, Plaintiff made another report to J.H. of her concerns about Sport Clips' pay practices, this time regarding her own pay.

39. More specifically, Sports Clips claimed that as a Salon Manager, Plaintiff was exempt from the overtime provisions of the FLSA, and purportedly paid Plaintiff on a salaried basis at a weekly salary rate of $684.00.

40. In order to be paid the full amount of her weekly base salary, Sports Clips required Plaintiff to work a minimum of eighty (80) combined hours during each two-week pay period.

41. When Plaintiff recorded eighty (80) or more hours of work during a two-week pay period, Sport Clips would pay Plaintiff the full amount of her base weekly salary for the two workweeks included in that pay period

42. In those workweeks when Plaintiff recorded eighty (80) or more hours of work during a two-week pay period, Sport Clips would pay Plaintiff her full base weekly salary of $684.00 per each workweek but would not provide her with overtime pay for any hours she worked in excess of forty (40) hours during those workweeks.

43. When Plaintiff recorded fewer than a combined total of eighty (80) hours during a two-week pay period, Sport Clips would not pay Plaintiff the full amount of her weekly base salary for the two workweeks in that pay period.

44. In those workweeks when Plaintiff recorded fewer than a total of eighty (80) combined hours of work during a two-week pay period, Sport Clips only paid Plaintiff for the number of hours she worked during those two workweeks at an amount of approximately $17.10 per hour, the hourly equivalent of her base weekly salary of $684.00 divided by forty (40) hours.

45. Plaintiff sometimes worked as many as fifty-five (55) hours in a workweek.

46. For example, during the pay period of June 7, 2020, through June 20, 2020, Plaintiff was scheduled to work in the store for a combined total of one hundred ten (110) hours.

47. Plaintiff actually performed more than 110 total hours of work during those two workweeks during the pay period of June 7, 2020, through June 20, 2020.

48. Plaintiff performed approximately fifty-five (55) hours of work during the workweek of June 7, 2020, through June 12, 2020, and approximately fifty-five (55) hours of work during the workweek of June 13, 2020 through June 20, 2020.

49. Despite the fact that Plaintiff working a combined total of approximately thirty (30) hours of overtime during that two-week pay period of June 7, 2020, through June 20, 2020, Great Clips only paid Plaintiff her base weekly salary of $684.00 for each of those workweeks.

50. In contrast, during the two-week pay period of August 2, 2020, through August 15, 2020, Plaintiff recorded a total of 77.89 hours of work.

51. For the two-week pay period of August 2, 2020, through August 15, 2020, Sports Clips paid Plaintiff at an hourly rate of $17.10 for each of the hours she worked during that pay period.

52. In August 2020, Plaintiff expressed to J.H. her belief that because Sport Clips was not paying Plaintiff her base weekly salary for pay periods in which Plaintiff did not work forty (40) hours per week, Sport Clips' refusal to pay her overtime pay was a violation of the law.

53. In approximately the beginning of September 2020, Plaintiff notified Sport Clips that she was soon going to need a reasonable accommodation for her pregnancy.

54. Specifically, Plaintiff told J.H. that she was going to need to sit for a period of time between sessions of cutting customers' hair.

55. Plaintiff told J.H. that while she was sitting between sessions of cutting customers' hair, she could perform other tasks, such as folding towels.

56. The alternative tasks Plaintiff proposed she could do were all tasks that needed to be performed at the facility where Plaintiff worked.

57. The alternative tasks Plaintiff proposed she could do were all tasks that Plaintiff already regularly delegated to the other employees under her supervision.

58. In approximately the second week of September 2020, Sport Clips demoted Plaintiff to assistant manager.

59. Sport Clips demoted Plaintiff after Plaintiff told J.H. of her upcoming need for an accommodation for her pregnancy.

60. Sport Clips demoted Plaintiff before she attempted to put her requested accommodation into practice.

61. Plaintiff's demotion to assistant manager resulted in a cut in hourly pay and in hours.

62. In approximately late October 2020, Plaintiff's gave Sport Clips a note from her doctor, stating that Plaintiff could work as many as forty (40) hours per week provided Plaintiff was permitted to sit between sessions cutting customers' hair.

63. Sport Clips informed Plaintiff that no such position was available and that her employment was being terminated.

## COUNT I
### Violation under 42 U.S.C. §§ 2000e *et seq.*
### Sex (Pregnancy) Discrimination – Termination

64. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

65. Plaintiff is female, and was pregnant at all times relevant, and is therefore a member of a protected class.

66. In demoting Plaintiff, Sport Clips subjected Plaintiff to an adverse employment action.

67. In terminating Plaintiff's employment, Sport Clips subjected Plaintiff to an adverse employment action.

68. Plaintiff's pregnancy—and therefore sex—was at least a motivating factor in Sport Clips' decision to terminate her employment.

69. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Sport Clips, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Sport Clips, thus making Sport Clips liable for said actions under the doctrine of *respondeat superior*.

70. Sport Clips failed to make good faith efforts to establish and enforce policies to prevent illegal sex discrimination against its employees.

71. Sport Clips failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

72. As shown by the foregoing, as a result of her demotion and termination, Plaintiff suffered intentional discrimination at the hands of the Sport Clips on the basis of her pregnancy—and therefore sex— in violation of Title VII.

73. As a direct and proximate result of Sport Clips' actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

74. As a further direct and proximate result of Sport Clips' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

75. Sport Clips' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Sport Clips or to deter Sport Clips and other entities from like conduct in the future.

76. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover reasonable attorneys' fees from Sport Clips.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Sport Clips for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorney's fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II
### Violation under 42 U.S.C. §§ 2000e *et seq.*
### Sex (Pregnancy) Discrimination – Failure to Accommodate

77. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

78. Plaintiff is female, and was pregnant at all times relevant, and is therefore a member of a protected class.

79. At all times relevant, Plaintiff could perform the essential functions of the job with or without reasonable accommodation.

80. Specifically, Plaintiff could perform the essential functions of her job with the opportunity to sit and perform other necessary work tasks between sessions cutting customers' hair.

81. By requesting the opportunity to sit and perform other necessary work tasks between sessions cutting customers' hair, Plaintiff requested reasonable accommodation for her pregnancy.

82. Allowing Plaintiff the opportunity to sit and perform other necessary work tasks between sessions cutting customers' hair would not have poses an undue hardship on Sport Clips.

83. Sport Clips has provided accommodations similar to Plaintiff's requested accommodation to other, non-pregnant employees.

84. Sport Clips refused to provide a reasonable accommodation to Plaintiff.

85. Sport Clips refused to engage in the interactive process with Plaintiff to determine a reasonable accommodation for her pregnancy.

86. Instead of engaging in the interactive process with Plaintiff to determine a reasonable accommodation for her pregnancy, Sport Clips terminated Plaintiff's employment.

87. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Sport Clips, and were at all such times acting within the scope

and course of their agency and employment, and/or their actions were expressly authorized or ratified by Sport Clips, thus making Sport Clips liable for said actions under the doctrine of *respondeat superior*.

88. Sport Clips failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including disability discrimination.

89. Sport Clips failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

90. As shown by the foregoing, Plaintiff suffered intentional discrimination based on her pregnancy—and therefore sex—in violation of Title VII.

91. As a direct and proximate result of Sport Clips' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

92. As a further direct and proximate result of Sport Clips' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

93. Sport Clips' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Sport Clips or to deter it and other employers from like conduct in the future.

94. Pursuant to the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to recover reasonable attorneys' fees from Sport Clips.

   WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Sport Clips for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief,

including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III
### Violation under 42 U.S.C. §§ 2000e *et seq.*
### Retaliation

95. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

96. Plaintiff is female, and was pregnant at all times relevant, and is therefore a member of a protected class.

97. At all times relevant, Plaintiff could perform the essential functions of the job with or without reasonable accommodation.

98. Specifically, Plaintiff could perform the essential functions of her job with the opportunity to sit and perform other necessary work tasks between sessions cutting customers' hair.

99. Plaintiff engaged in a protected activity under Title VII by making a good faith request for an accommodation for her pregnancy, to wit the opportunity to sit and perform other necessary work tasks between sessions cutting customers' hair.

100. Allowing Plaintiff the opportunity to sit and perform other necessary work tasks between sessions cutting customers' hair would not have poses an undue hardship on Sport Clips.

101. Plaintiff's request for reasonable accommodation was at least a determining factor in Sport Clips' decision to terminate her employment.

102. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Sport Clips, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or

ratified by Sport Clips, thus making Sport Clips liable for said actions under the doctrine of *respondeat superior*.

103. Sport Clips failed to make good faith efforts to establish and enforce policies to prevent illegal retaliation against its employees.

104. Sport Clips failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

105. As shown by the foregoing, as a result of her termination, Plaintiff suffered retaliation at the hands of the Sport Clips in violation of Title VII.

106. As a direct and proximate result of Sport Clips' actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

107. As a further direct and proximate result of Sport Clips' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

108. Sport Clips' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Sport Clips or to deter Sport Clips and other entities from like conduct in the future.

109. Pursuant to the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to recover reasonable attorneys' fees from Sport Clips.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Sport Clips for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages;

for reasonable attorney's fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT IV**
**Violation under 29 U.S.C. § 201** *et seq.*
**Failure to Pay Overtime Wages**

110. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all paragraphs above as though set out fully herein.

111. As part of her job with Sports Clips, Plaintiff was regularly required to work in excess of forty (40) hours per workweek.

112. Plaintiff was entitled to payment for wages at a rate of pay of one and one-half times her regular rate of pay for all work performed in excess of forty (40) hours per workweek.

113. Sports Clips is not entitled to any exemption from the requirement to pay one and one-half times Plaintiff's regular rate of pay for all work performed in excess of forty (40) hours per workweek.

114. Plaintiff was regularly required to work in excess of forty (40) hours per workweek for Sports Clips during her employment.

115. Sports Clips failed to pay Plaintiff wages at a rate of pay of one and one-half times her regular rate of pay for all work performed in excess of forty (40) hours per workweek during the course of Plaintiff's employment.

116. As a direct and proximate result of Sport Clips' actions and/or omissions, Plaintiff has been deprived income, to wit, the unpaid overtime to which she is entitled for those workweeks during which she performed work in excess of forty (40) hours.

117. Sports Clips' failure to pay Plaintiff overtime pay was willful and not done in good faith.

118. Plaintiff is entitled to recover liquidated damages from Sport Clips pursuant to 29 U.S.C. § 216(b).

119. Plaintiff is entitled to recover reasonable costs and attorney's fees from Sport Clips pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Sports Clips for economic damages, including back-pay; for liquidated damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT V
### Violation under 29 U.S.C. § 201 *et seq*.
### FLSA – Retaliation

120. Plaintiff re-alleges and incorporates herein by reference as though fully set forth herein, all of the above numbered paragraphs.

121. Plaintiff engaged in protected activities by filing a good faith internal complaint with Sport Clips regarding its practice of not paying its employees at a rate of pay of one and one-half times their regular rate of pay for all work performed in excess of forty (40) hours per workweek.

122. Sport Clips terminated Plaintiff's employment.

123. Plaintiff's good faith internal complaint of Sport Clips' unlawful conduct was a determining factor in Sport Clips' decision to terminate her employment.

124. At all times mentioned herein, before and after, the above-described persons were agents, servants, and employees of Sport Clips and were at all such times acting within the course and scope of their agency and employment, and/or their actions were expressly authorized by Sport Clips, thus making Sport Clips liable for said actions under the doctrine of *respondeat superior*.

125. Sport Clips failed to make good faith efforts to establish and enforce policies to prevent illegal labor practices against its employees, including retaliation for engaging in protected activities such as good faith opposition to Sport Clips' unlawful employment practices.

126. Sport Clips failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the labor laws, including the FLSA.

127. As shown by the foregoing, Sport Clips engaged in a willful violation of the FLSA, and its actions were not in good faith.

128. As a direct and proximate result of Sport Clips' actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

129. As a further direct and proximate result of Sport Clips' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

130. By failing to take prompt and effective remedial action, Sport Clips in effect condoned, ratified, and/or authorized the retaliation against the Plaintiff.

131. As shown by the foregoing, Sport Clips' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Sport Clips or to deter it and other employers from like conduct in the future.

132. Plaintiff is entitled to recover liquidated damages from Sport Clips pursuant to 29 U.S.C. § 216(b).

133. Plaintiff is entitled to recover reasonable costs and attorney's fees from Sport Clips pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff requests that the Court enter judgement in her favor and against Defendant Sport Clips Contracting, Inc., for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### COUNT VI
### Wrongful Termination in Violation of Kansas Public Policy
### Retaliation for Opposition to Illegal Wage Practices
### (Pled in the Alternative to Count IV)

134. To the extent Plaintiff's above allegations are applicable to claims made pursuant to Kansas common law, and to the extent Plaintiff is not entitled to a claim of retaliation pursuant to the FLSA, Plaintiff hereby re-alleges and incorporates by reference the allegations contained in paragraphs 1-41 above as though set out fully herein.

135. The Kansas Legislature has expressed a well-established and clear mandate of public policy that the state prohibits and makes unlawful the discharge of, or other discrimination against, an employee because such employee has made a complaint to her employer that she has not been paid wages in accordance with the KMWMHL. *See* K.S.A. 44-1210(b).

136. Plaintiff made a good faith complaint to a manager at Sport Clips that Sport Clips was in violation of the KMWMHL's overtime pay requirements.

137. Sport Clips terminated Plaintiff's employment.

138. Plaintiff's good faith opposition of Sport Clips' unlawful conduct was a determining factor in Sport Clips' decision to terminate her.

139. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Sport Clips and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Sport Clips, thus making Sport Clips liable for said actions under the doctrine of *respondent superior*.

140. Sport Clips failed to make good faith efforts to establish and enforce policies to prevent illegal labor practices against its employees, including retaliation for making good faith complaints of an employer's failure to comply with overtime laws.

141. Sport Clips failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the labor laws, including the KMWMHL.

142. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Sport Clips based on her report of illegal labor practices in violation of the KMWMHL.

143. As a direct and proximate result of Sport Clips' actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

144. As a further direct and proximate result of Sport Clips' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

145. By failing to take prompt and effective remedial action, Sport Clips in effect condoned, ratified, and/or authorized discrimination against the Plaintiff.

146. As shown by the foregoing, Sport Clips' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Sport Clips or to deter it and other employers from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Sport Clips for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for punitive damages; for costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

## Demand for Jury Trial

Plaintiff requests a trial by jury in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

CORNERSTONE LAW FIRM

By: */s/ Joshua P. Wunderlich*
Joshua P. Wunderlich         D. Kan. #78506
j.wunderlich@cornerstonefirm.com
5821 NW 72nd Street
Kansas City, Missouri 64151
Telephone            (816) 581-4040
Facsimile            (816) 741-8889

ATTORNEY FOR PLAINTIFF